Kathleen **PFAHLER**, et al., Plaintiffs

v.

**NATIONAL LATEX COMPANY,**
**et al., Defendants.**

**No. 1:02 CV 1446.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 8, 2005.

Anand N. Misra, Shaker Heights, OH, Brian J. Halligan, Halligan & Ginty, Ashland, OH, Dennis J. Niermann, Cleveland, OH, Robert S. Belovich, Parma, OH, for Plaintiffs.

Gary A. Piper, Gregory G. Baran, Baran Piper Tarkowsky Fitzgerald & Theis, Mansfield, OH, Michele G. Cerni, Baran Piper Tarkowsky Fitzgerald & Theis, Toledo, OH, Andrew J. Dorman, David H. Brown, Ellyn B. Mehendale, Janik & Dorman, Ari H. Jaffe, Kohrman, Jackson & Krantz, Cleveland, OH, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

WELLS, District Judge.

Plaintiffs Kathleen Pfahler, R. Dean Strine, Gary L. Ramsey, and Theresa Devan filed this complaint, stylized as a derivative action on behalf of themselves, the National Latex Products Company Employee Welfare Benefit Plan ("NLP Plan"), and other NLP Plan participants, against defendants National Latex Products Co. ("National Latex"), Harry R. Gill, Jr. ("Harry Gill"), H. Ross Gill, III ("Ross Gill"), Patricia R. Gill, Glass & Associates, Inc. ("Glass"), Jay P. AuWerter, Jr., and General Electric Capital Corporation.[1] Plaintiffs allege that each of the defendants was a fiduciary, co-fiduciary, fiduciary-in-fact or trustee of the NLP Plan or were co-conspirators who conspired to breach and did breach fiduciary duties owed to the NLP Plan and its participants. On 22 April 2005, this Court issued a comprehensive summary judgment ruling which resulted in the dismissal of Harry Gill, Patricia Gill, and General Electric Capital Corporation.[2] (Docket # 235). With respect to the remaining defendants, this Court found that there were genuine issues of material fact regarding whether Glass, AuWerter, National Latex, and Ross Gill "breached their fiduciary duty by misusing plan assets in the form of employee contributions and by misrepresenting to NLP Plan participants that outstanding health claims would be paid." (Docket # 235, at 39–40).

Despite reaching that conclusion, this Court found that there were unresolved questions about the precise nature of plaintiffs' claim and the damages, if any, which are potentially recoverable. Accordingly, this Court requested briefing on the following five questions:

1. Because any recovery for a breach of fiduciary duty claim brought on behalf of a plan must go to that plan,

---

1. This case was initially filed in the Ohio Court of Common Pleas as a class action, under Ohio law, seeking the recovery of wrongly denied wages and/or fringe benefits. (Docket # 1, Ex. 2). On 25 July 2002, several defendants removed this case to federal court asserting that plaintiffs' claims were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. (Docket # 1). On 9 December 2002, Northern District of Ohio Chief Judge Matia, to whom the case was assigned at the time, denied plaintiffs' motion to remand and ruled that plaintiffs' claims for wrongfully withheld wages and benefits were preempted by ERISA. (Docket # 55). On 4 March 2003, plaintiffs filed an amended complaint restyling their complaint as an ERISA-derivative action. (Docket # 75). Judge Matia subsequently recused himself and the case was reassigned to Judge Lesley Wells. (Docket # 160 and # 161). Although plaintiffs' initial complaint sought unpaid wages, their amended complaint advances no such claim. (Docket # 75).

2. In that same order, this Court dismissed Glass and AuWerter's cross-claims against National Latex.

can plaintiffs. bring a derivative action on behalf of a plan which is no longer operating?

2. Assuming that plaintiffs can bring a derivative action on behalf of a plan that is no longer operating, what damages would they be entitled to recover if successful?

3. Assuming that plaintiffs can bring a derivative action on behalf of a plan that is no longer operating and that they prevail and recover damages, what happens to the damages?

4. If plaintiffs seek to bring an ERISA Section 502(a)(3) breach of fiduciary duty claim on behalf of all plan participants, must they do so as a class action and comply with the requirements of Fed.R.Civ.P. 23?

5. Given that plaintiffs are limited to equitable relief in Individual Actions, what damages can plaintiffs recover if they prevail on their individual claims for breach of fiduciary duty?

(Docket # 236). Plaintiffs submitted an initial brief with respect to these questions on 13 May 2005. (Docket # 237). Defendants Ross Gill and National Latex filed a response brief (Docket # 240), as did defendants Glass and AuWerter (Docket # 239).[3] Plaintiffs then filed a reply. (Docket # 242).

For the reasons set forth below, this Court concludes that plaintiffs may not bring a derivative action on behalf of a defunct plan and that plaintiffs may only bring a breach of fiduciary duty claim on behalf of other plan participants if they comply with the requirements of Fed. R.Civ.P. 23. Accordingly, plaintiffs are confined to their individual claims for breach of fiduciary duty based on ERISA Section 502(a)(3) and are limited to equitable relief on those claims. Because the damages sought by plaintiffs are either legal in nature or not clearly traceable, plaintiffs' alleged damages are beyond the remedial scope of Section 502(a)(3).

## I. Nature of the Plaintiffs' Claim

The Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, provides the legal basis for the plaintiffs' complaint. ERISA § 502(a), 29 U.S.C. § 1132(a), sets out the framework by which participants and beneficiaries of employee benefit plans can enforce their rights.[4] This civil enforcement framework provides two mechanisms for bringing lawsuits for breaches of fiduciary duty which are relevant to this case: 1) one by which plan participants and/or beneficiaries bring an action on behalf of the plan itself (ERISA Section 502(a)(2)); and, 2) one by which individual participants and/or beneficiaries bring actions on their own behalf (ERISA Section 502(a)(3)). *See e.g., Varity Corp. v. Howe*, 516 U.S. 489, 510–15, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Smith v. Provident Bank*, 170 F.3d 609, 616 n. 3 (6th Cir.1999). Plain-

---

3. National Latex and Ross Gill initially filed their brief on 27 May 2005 (Docket # 238); however, that filing was quickly followed by an amended brief (Docket # 240).

4. It provides, in pertinent part, that a civil action may be brought:

    * * *

    (2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 [which relates to liability for breach of fiduciary duty] of this title; [ERISA Section 502(a)(2) ]

    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; [ERISA Section 502(a)(3) ]

    * * *

    29 U.S.C. 1132(a).

tiffs maintain that their action should properly be understood as a derivative action on behalf of the NLP Plan and that "[t]he fact that the Plan may no longer be operating is no limitation upon this Court's authority to grant relief to the Plan under Section 502(a)(2)." (Docket #237, at 3 and 8). However, if precluded from seeking relief on behalf of the NLP Plan itself, plaintiffs contend, in the alternative, that they may bring suit on behalf of all plan participants, under ERISA § 502(a)(3), without complying with the provisions of Fed.R.Civ.P. 23. As explained in more detail below, this Court disagrees on both points.

## A. Breach of Fiduciary Duty Action on Behalf of a Plan: ERISA Section 502(a)(2)

■ Pursuant to ERISA Section 502(a)(2), participants and beneficiaries of an employee benefit plan may bring actions for relief from breaches of fiduciary duty on behalf of the plan. 29 U.S.C. §§ 1109 and 1132(a)(2); *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140–43, n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Plan fiduciaries who breach any of their ERISA-imposed responsibilities, obligations, or duties may be held personally liable for damages, for restitution, and for "such other equitable and remedial relief as the court may deem appropriate." *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 252, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (*citing* 29 U.S.C. § 1109(a)). Section 502(a)(2) actions for breach of fiduciary duty must be brought "in a representative capacity on behalf of the plan as a whole"

and recovery for a breach of fiduciary duty "inures to the benefit of the plan as a whole." *Russell,* 473 U.S. at 140–43, n. 9, 105 S.Ct. 3085; *see also Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 92 (6th Cir. 1997); *Kuper v. Iovenko,* 66 F.3d 1447, 1452–53 (6th Cir.1995) (explaining that any recovery for breach of fiduciary duty "must go to the plan"); *Tregoning v. Amer. Community Mut. Ins. Co.,* 12 F.3d 79, 83 (6th Cir.1993); *In re AEP ERISA Litigation,* 327 F.Supp.2d 812, 820–21 (S.D.Ohio 2004).

In support of plaintiffs' contention that they can bring a Section 502(a)(2) action for breach of fiduciary duty on behalf of a defunct plan, plaintiffs rely heavily on *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund,* 933 F.Supp. 1124 (D.Mass.1996).[5] In *Jackson,* a single plaintiff sought the recovery of medical benefits from a defunct plan. 933 F.Supp. at 1129. Eschewing defendants' arguments that ERISA offers "no relief for an aggrieved beneficiary seeking damages from a plan that has been terminated," the court imposed a compound remedial scheme to afford plaintiff relief. *Id.* at 1135–40. First, the court permitted the plaintiff to obtain money damages on behalf of the plan, pursuant to Section 502(a)(2), and ruled that a constructive trust could be set up to receive those damages. *Id.* at 1129 and 1135–38. Next, the court concluded that the plaintiff could, pursuant to Section 502(a)(3), obtain equitable relief of restitution which included "compelling trustees to pay the benefits due." *Id.* at 1139–40.

---

5. Although plaintiffs also rely on *McFadden v. R & R Engine & Machine Co.,* 102 F.Supp.2d 458 (N.D.Ohio 2000), that case is inapposite. Although the court in *McFadden* found support for its remedial approach in *Jackson,* it relied on Section 502(a)(3) as the sole basis for affording plaintiff relief. 102 F.Supp.2d

at 473 (explaining that "[i]f McFadden is to have any remedy at all, it must come under [Section 502(a)(3)]"). Accordingly, *McFadden* is discussed in more detail in the portion of this opinion which addresses the individual plaintiffs' potential damages.

■ To the extent that *Jackson* suggests that breach of fiduciary duty actions may be initiated on behalf of the defunct plans,[6] this Court declines to follow its legal reasoning. Though purporting to sue on behalf of the defunct NLP Plan, the plaintiffs in this case are not trying to recover damages suffered by the NLP Plan, but rather are attempting to recover benefits and contributions which they are allegedly owed by the now defunct NLP Plan.[7] Such attempts by plan participants to use Section 502(a)(2) as a mechanism for obtaining individual damages has been squarely and repeatedly rejected by the Sixth Circuit. *Bauer v. RBX Industries, Inc.,* 368 F.3d 569, 582 n. 6 (6th Cir.2004) (explaining that a party alleging a Section 502(a)(2) breach of fiduciary duty claim "cannot seek personal remuneration"); *Weiner,* 108 F.3d at 91–92; *Adcox v. Teledyne, Inc.,* 21 F.3d 1381, 1390 (6th Cir. 1994) (providing that plaintiffs cannot seek recovery on their own behalf with a Section 502(a)(2) breach of fiduciary claim); *Tregoning,* 12 F.3d at 83.

Accordingly, while the defunct nature of a plan may not necessarily represent an absolute obstacle to derivative actions on its behalf,[8] it makes plaintiffs' attempt to

---

6. Although its compound remedy seemingly contemplates breach of fiduciary duty actions on behalf of defunct plans, the *Jackson* court also employs language which appears to forestall such an approach. 933 F.Supp. at 1135 (noting that "because the Local 42 Fund is defunct, there is no plan on whose behalf Jackson may sue").

7. Plaintiffs seek relief "to make the plan participants whole." (Docket # 237, at 4–5). Their purported damages consist of: 1) unpaid claims submitted to Stateline, Direct Care of America, and Great West; 2) claims paid by the plan participants after the plan ceased operating (plaintiffs note that "[t]hese claims contain duplication of claims in the Stateline, DCA, and Great West databases"); 3) retiree medical expenses; and 4) monies paid into plaintiffs' flexible spending accounts. (Docket # 237, at 5–7).

8. In arguing that Section 502(a)(2) derivative actions may never be maintained on behalf of defunct ERISA plans, defendants Glass and AuWerter analogize to decisions which purportedly have "precluded a shareholder from pursuing derivative actions against dissolved corporations." (Docket # 239, at 4). As defendants' general statement oversimplifies and mischaracterizes the ability of shareholders to bring derivative actions on behalf of dissolved corporations, its argument lacks persuasive force.

First, the three cases defendants cite—*Gagan v. American Cablevision, Inc.,* 77 F.3d 951 (7th Cir.1996), *Katz v. Aspinwall,* 342 F.Supp. 286 (N.D.Ala.1971), *Independent Investor Protective League v. Time, Inc.,* 66 A.D.2d 391, 412 N.Y.S.2d 898 (1st Dept.1979)—do not support defendants' broad proposition. In *Gagan,* the Seventh Circuit did not hold, as suggested by defendants, that a limited partner could not bring a claim on behalf of a dissolved limited partnership, but rather concluded that because the alleged injury was to plaintiff's business and property interest there was no factual basis on which to base a derivative claim. 77 F.3d at 960. Defendants' reliance on the New York Appellate Division's decision in *Independent Investor* is likewise misguided as that decision was expressly overruled by the Court of Appeals of New York. *See Independent Investor Protective League v. Time, Inc.,* 50 N.Y.2d 259, 264, 428 N.Y.S.2d 671, 406 N.E.2d 486 (1980) (concluding that the dissolution of the corporation, without more, did not deprive shareholders of their derivative remedy). Although *Katz* did conclude that shareholders could not bring derivative suits on behalf of dissolved corporations, its conclusion was based squarely on the particularities of Alabama law. 342 F.Supp. at 287–88.

Moreover, numerous courts have permitted, both implicitly and explicitly, derivative actions brought on behalf of dissolved corporations. *Macene v. MJW, Inc.,* 951 F.2d 700, 701–702 (6th Cir.1991) (involving a shareholder derivative Section 1983 lawsuit brought on behalf of a dissolved corporation); *Halliwell Associates, Inc. v. C.E. Maguire Servs., Inc.,* 586 A.2d 530, 535–36 (R.I.1991) (concluding, under Massachusetts law, that derivative shareholder claims may be brought on behalf of a dissolved corporation until

recover for their own personal losses even more transparent. As Section 502(a)(2) does not permit personal recovery by individual plan participants, plaintiffs may not maintain their breach of fiduciary duty claim as a derivative action on behalf of the NLP Plan. A conclusion to the contrary would undermine the equitable relief limitation imposed on individual breach of fiduciary duty claims, discussed in more detail below, by permitting plan participants to recover money damages expressly precluded by Section 502(a)(3). If plaintiffs could recharacterize individualized claims for money damages (e.g. unpaid benefits) as claims asserted on behalf of the NLP plan, the careful distinction between Section 502(a)(2) and Section 502(a)(3) breach of fiduciary duty claims, drawn by Congress and the United States Supreme Court, would be stripped of meaning.

## B. Breach of Fiduciary Duty Action By Individual Plan Participants and/or Beneficiaries: ERISA Section 502(a)(3)

■ ERISA § 502(a)(3) allows participants and beneficiaries to bring civil actions "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Pursuant to Section 502(a)(3), participants and beneficiaries may bring suits in their individual capacities against ERISA fiduciaries to redress breaches of an ERISA's fiduciary duties. *Varity Corp. v. Howe,* 516 U.S. at 507–15, 116 S.Ct. 1065 (explaining that the phrase "appropriate equitable relief" was "broad enough to cover individual relief for breach of a fiduciary duty"); *see also Allinder v. Inter–City Prods. Corp.,* 152 F.3d 544, 550–51 (6th Cir.1998). Such

actions are limited, however, to situations where participants and/or beneficiaries would not otherwise have an adequate remedy for relief. *See e.g. Varity,* 516 U.S. at 515, 116 S.Ct. 1065; *Larocca v. Borden, Inc.,* 276 F.3d 22, 28–29 (1st Cir.2002); *Tolson v. Avondale Industries, Inc.,* 141 F.3d 604, 610 (5th Cir.1998); *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474–75 (9th Cir.1997), *aff'd* 525 U.S. 299, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999). For instance, 502(a)(3) actions have been permitted in cases in which there is no longer a functioning employee benefit plan and therefore the plaintiffs lack a remedy under Section 502(a)(1). *Ream v. Frey,* 107 F.3d 147, 151–53 (3rd Cir.1997); *Larocca,* 276 F.3d at 29 (explaining that plaintiffs are "permanently ineligible for relief" under Section 502(a)(1) when the ERISA plan is no longer functioning). Given that the plaintiffs in this case do not otherwise have an adequate remedy for relief, their only recourse, if any, is to bring an individual action for breach of fiduciary duty pursuant to Section 502(a)(3). However, as discussed below, Section 502(a)(3) does not permit them to bring an action on behalf of all other NLP Plan participants without complying with Rule 23.

■ Plaintiffs have not identified, nor has this Court found, a single case in which plan participants were permitted to bring a Section 502(a)(3) breach of fiduciary duty claim on behalf of absent plan participants without adhering to the strictures of Rule 23 of the Fed.R.Civ.P. On the contrary, courts have consistently addressed whether such representative

three years after dissolution as provided by the survival statute); *Crosby v. Beam,* 1988 WL 72437, at *3 (Ohio Ct.App. Jul. 8, 1988) (concluding that "there is little doubt" that

plaintiffs could have maintained a shareholder derivative action on behalf of a dissolved corporation).

claims could go forward by assessing whether the plaintiffs met Rule 23's requirements. *See e.g. Rankin v. Rots*, 220 F.R.D. 511 (E.D.Mich.2004) (granting class certification); *Babcock v. Computer Assoc. Intern., Inc.*, 212 F.R.D. 126 (E.D.N.Y. 2003) (granting class certification); *Bellas v. CBS, Inc.*, 201 F.R.D. 411 (W.D.Pa.2000) (granting class certification); *Gesell v. Commonwealth Edison, Co.*, 216 F.R.D. 616 (C.D.Ill.2003) (denying class certification because of a lack of commonality); *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 142 n. 15 (S.D.N.Y.2003) (denying class certification due to a lack of typicality, among other reasons).

■ Having discovered no legal support for the proposition that they can bring an action on behalf of all NLP Plan participants without complying with Rule 23, plaintiffs try to recharacterize their suit as one brought "in a representative capacity" on behalf of a plan fiduciary. As an initial matter, this new legal argument contradicts their pleading which clearly states that the action was being brought "on behalf of the Plan and all Plan participants." (Am. Comp. at ¶ 3). Even if plaintiffs had pled such an action, they have identified no basis in law for allowing a plan participant to avoid the application of Rule 23 by stepping into the shoes of a fiduciary and pursuing a representative action. Though not specifically addressing the unique argument raised by plaintiffs in this case, the Second Circuit explicitly rejected the notion that "class-wide relief is essentially automatic" under Section 502(a)(3), explaining that nothing in that section "requires class-based relief or expressly supersedes the requirements of Federal Rule of Civil Procedure 23." *Mc-Donald v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 320 F.3d 151, 161 (2nd Cir.2003). Just as class-wide relief is not automatic under Section 502(a)(3), plaintiffs may not avoid its requirements by stylizing their claim to recover damages for all NLP Plan participants as one brought on behalf of a plan fiduciary. Such a method of "representing" the interests of the plan participants "would create an end run around the limitations of Rule 23," limitations "which are explicitly grounded in due process." *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 882 (6th Cir.1997) (expressly limiting the application of the theory of "virtual representation" in the context of Rule 23 class actions).

Absent a direct expression by Congress to depart from the usual course of trying all civil suits under the Federal Rules of Civil Procedure, Rule 23 applies to all civil actions in federal court. *Califano v. Yamasaki*, 442 U.S. 682, 699–700, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). As plaintiffs have not offered a persuasive reason for abandoning Rule 23's requirements in the context of a Section 502(a)(3) claim, they must comply with Rule 23 requirements in order to bring such a claim on behalf of other NLP Plan participants.[9] Because plaintiffs have not pled, argued, or demonstrated compliance with Rule 23, they are limited to pursuing Section 502(a)(3) breach of fiduciary duty claims on their own behalf.

---

9. In support of their assertion that Rule 23's requirements are not mandatory, plaintiffs extract a portion of the Secretary of Labor's *amicus curiae* brief in *Coan v. Kaufman*, a case currently on appeal before the Second Circuit. (Docket # 237, at 9, Ex. 2). Although the brief contains some expansive language which could be interpreted to support plaintiffs' position, it addressed the necessary procedure for fiduciary suits filed on behalf of a plan under Section 502(a)(2), rather than the procedure required to pursue fiduciary suits on the behalf of absent plan participants under Section 503(a)(3).

## II. Plaintiffs' Alleged Damages

■ Having concluded that plaintiffs' breach of fiduciary duty claim can only be brought on their own behalf, pursuant to Section 502(a)(3), this Court must next consider which, if any, of the damages sought by the named plaintiffs are recoverable. Relief under Section 502(a)(3) is limited to "those categories of relief that were typically available in equity." *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages" and "money damages are, of course, the classic form of legal relief." *Id.* at 210, 122 S.Ct. 708; *see also Qualchoice, Inc. v. Rowland,* 367 F.3d 638, 649 (6th Cir.2004) (explaining that the restitution of money for a breach of contract constitutes legal relief).

The record in this case contains evidence of two types of damages allegedly suffered by the named plaintiffs: 1) unpaid benefits purportedly owed to plaintiffs under the terms of the NLP Plan ("unpaid benefits"); and 2) funds contributed by plaintiff Gary Ramsey into a flexible spending account ("FSA contributions"). Specifically, plaintiffs Pfahler, Strine, Ramsey, and Devan testified during their depositions that they had approximately $8400, $4700, $3400, and $105 in unpaid claims, respectively.[10] Plaintiff Gary Ramsey also testified that he was never reimbursed for $145.40 left in his flexible spending account.[11]

### 1. *Unpaid Benefits*

■ Relying on *McFadden v. R & R Engine & Machine Co.,* 102 F.Supp.2d 458 (N.D.Ohio 2000), plaintiffs contend that they are entitled to recover unpaid benefits. In *McFadden,* the district court concluded that a plaintiff could recover unpaid medical benefits (minus premium co-payments) in an individual breach of fiduciary action brought pursuant to ERISA Section 502(a)(3). 102 F.Supp.2d at 475–76. In finding that such relief was permissible pursuant to Section 502(a)(3), the court characterized the award of back benefits to employee plan participants as equitable restitution and found that such an award was necessary "to make [plaintiff] whole." *Id.*

Although *McFadden* clearly supports plaintiffs' position regarding the scope of equitable relief under Section 502(a)(3), its conclusion that awards involving unpaid benefits constituted equitable restitution cannot be maintained in light of the United States Supreme Court's opinion in *Knudson* which clarified the distinction between legal and equitable restitution. 534 U.S. at 212, 122 S.Ct. 708; *see also Calhoon v. Trans World Airlines, Inc.,* 400 F.3d 593, 597–98 (8th Cir.2005) (noting that *Knudson* foreclosed "make whole" remedial scheme's under Section 502(a)(3)). Recognizing that restitution may constitute a equitable form of relief, the United States Supreme Court explained that "not all relief falling under the rubric of restitution is

10. In their post-summary judgment brief, plaintiffs also contend, for the first time, that Ms. Pfahler suffered damages in the form of the increased cost of medical services as a result of the purported breach of fiduciary duty. Given that these damages are, according to plaintiffs, duplicated in the claims submitted to the National Latex Plan administrator, this Court need not consider them separately in determining whether such damages are recoverable under Section 502(a)(3).

11. Plaintiffs appear to suggest, in passing, that plaintiff Dean Strine's damages include medical benefits through age 65. (Docket # 237, at 7). Presenting this issue for the first time, plaintiffs make no attempt to explain or support this assertion.

available in equity." *Knudson*, 534 U.S. at 212, 122 S.Ct. 708. Restitution is a legal remedy where the plaintiff seeks to obtain a judgment imposing personal liability on the defendant to pay a sum of money. *Id.* at 213–15, 122 S.Ct. 708. On the other hand, restitution is an equitable remedy to the extent that the action seeks to "restore" to the plaintiff "money or property identified as belonging in good conscience to the [him or her that] could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213–14, 122 S.Ct. 708. Equitable relief includes "ill-gotten plan assets or profits" and is properly measured by the defendant's gains, not the plaintiff's losses. *Harris Trust and Sav. Bank v. Salomon Smith*, 530 U.S. 238, 253, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000); *Mertens*, 508 U.S. at 260, 113 S.Ct. 2063; *Crosby*, 382 F.3d at 595–96; *Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 482–83 (6th Cir.2001). Applying *Knudson's* definitions of legal and equitable restitution, plaintiffs' claims regarding unpaid benefits under the NLP Plan are legal in nature.

In addition to elucidating the distinction between legal and equitable restitution, *Knudson* also rejected the intellectual underpinnings of *McFadden's* holding. In *McFadden*, the district court relied on court opinions which treated Title VII backpay as equitable relief, noted that backpay and unpaid benefits were analogous, and therefore concluded that the recovery of unpaid benefits constituted equitable relief. 102 F.Supp.2d at 475. *Knudson* repudiated this analysis, concluding that "Congress 'treated [backpay] as equitable' in Title VII ... only in the narrow sense that it allowed backpay to be awarded *together with* equitable relief." 534 U.S. at 218, n. 4, 122 S.Ct. 708 (emphasis in original). Though backpay may be an integral part of an equitable remedy in a Title VII case, that does not translate "a freestanding for money damages" into equitable relief in the context of an ERISA case. *Id.*

In pursuing unpaid benefits which they claim an entitlement to under the terms of the NLP Plan, plaintiffs seek to collect monetary damages by imposing "personal liability on [defendants] for a contractual obligation." *Knudson*, 534 U.S. at 221, 122 S.Ct. 708. Such damages constitute legal relief which is not recoverable under Section 502(a)(3). *Id.; see also Crosby v. Bowater Inc. Retirement Plan for Salaries Employees of Great Northern Paper, Inc.*, 382 F.3d 587, 594 (6th Cir.2004) (explaining that Section 502(a)(3) does not "authorize a plan participant to sue for recovery of benefits due to him under the terms of the plan"); *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir.2002) (finding that a claim for restoration of lost health insurance benefits does not constitute equitable relief); *Calhoon*, 400 F.3d at 597–98 (concluding that "restitution" of medical bills and costs is not equitable relief and that "make-whole" relief is not available in equity for a breach of fiduciary duty); *Kishter v. Principal Life Ins. Co.*, 186 F.Supp.2d 438, 446 (S.D.N.Y.2002) (holding that plaintiff's claim to recover damages caused by her reliance on defendant's alleged misstatements are compensatory damages which do not qualify as equitable relief).

Due to the legal nature of the relief sought, plaintiffs cannot recover their alleged unpaid benefits in a Section 502(a)(3) breach of fiduciary duty action.

2. *Flexible Spending Account ("FSA") Contributions*

■ Although constituting only a minor component of plaintiffs' alleged damages, Gary Ramsey's contributions to a flexible spending account, which were to be used

to reimburse out-of-pocket health care expenses, are a qualitatively different type of damages and must be handled separately. According to plaintiffs, when the NLP Plan ceased operating, Gary Ramsey had $145.40 left in his FSA for which he was never reimbursed. Given that Mr. Ramsey contributed these funds into an account for his own use, such funds "in good conscience" belong to him. *Knudson,* 534 U.S. at 213, 122 S.Ct. 708. This Court's analysis does not, however, end here.

Under *Knudson,* a claim for equitable restitution is possible only where the specific property being sought "could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213, 122 S.Ct. 708. In this case, Mr. Ramsey may only recover his FSA contributions if they can be clearly traced to funds in possession of one of the defendants. Because Mr. Ramsey has made no attempt to trace these funds, let alone present any evidence that they can be clearly traced to funds in the possession of Glass, AuWerter, Ross Gill, or National Latex, his equitable restitution claim fails.

## III. CONCLUSION

Because plaintiffs may not bring a derivative action, pursuant to Section 502(a)(2), on behalf of a defunct plan to obtain unpaid benefits or to recover FSA contributions and because they may not bring a breach of fiduciary duty action, pursuant to Section 502(a)(3), on behalf of all plan participants without complying with Rule 23's class action requirements, plaintiffs are limited to their own Section 502(a)(3) breach of fiduciary duty claims. Although this Court previously concluded that material questions of fact remained concerning defendants Glass, AuWerter, Ross Gill, and National Latex's fiduciary status and purported breaches of fiduciary duty, de-

fendants are nonetheless entitled to judgment as a matter of law because the unpaid benefits sought by the plaintiffs are not recoverable under Section 502(a)(3) and the FSA contributions are not clearly traceable to funds in the defendants' possession.

Although this Court's conclusion may leave plaintiffs without a remedy, this result is unavoidable. ERISA's "complex and detailed" statutory scheme "resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs." *Mertens,* 508 U.S. at 262, 113 S.Ct. 2063. In light of ERISA's comprehensive and carefully integrated civil enforcement scheme, courts must take "a cautious approach to inferring remedies not expressly authorized by the text." *Harris Trust,* 530 U.S. at 247, 120 S.Ct. 2180 (*quoting Russell,* 473 U.S. at 146, 105 S.Ct. 3085); *see also Knudson,* 534 U.S. at 209, 122 S.Ct. 708. The *Jackson* court's "compound remedy" and the *McFadden* court's designation of unpaid benefits as recoverable under Section 502(a)(3) run afoul of ERISA's limitations that any recovery under Section 502(a)(2) inure to the plan as a whole and that recovery under Section 502(a)(3) be limited to equitable relief as defined by the United States Supreme Court in *Knudson.* This Court may not "expand the remedial scheme prescribed in ERISA based on vague notions of policy, particularly when the text of the statute and the Supreme Court's interpretation of the text are specific about available remedies." *Calhoon,* 400 F.3d at 598.[12]

IT IS SO ORDERED.

---

12. Although the United States Supreme Court

has noted that "given [ERISA's objectives] it

---

is hard to imagine why Congress would want to immunize breaches of fiduciary duty that harm individuals by denying injured beneficiaries a remedy," *Varity*, 516 U.S. at 513, 116 S.Ct. 1065, it has more recently rejected attempts, based on "vague notions of a statute's basic purpose," to craft remedies "to overcome the words of [ERISA's] text," *Knudson*, 534 U.S. at 220, 122 S.Ct. 708.